CILENTI & COOPER, PLLC
Justin Cilenti (GC2321)
Peter H. Cooper (PHC4714)
60 East 42nd Street – 40th Floor
New York, NY 10165
T. (212) 209-3933
F. (212) 209-7102
info@jcpclaw.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

| | | |
|---|---|---|
| MARTIN VILLANO, VICTOR MORALES, MARCOS DIEGO TAPIA, and JORGE LUIS GARCIA, on behalf of themselves and others similarly situated, | : : : : | Case No. 22-CV-9417 |
| Plaintiffs, | : : | FLSA COLLECTIVE ACTION COMPLAINT |
| -against- | : : : | |
| BROADWAY VIVA, INC. d/b/a CAFÉ VIVA GOURMET PIZZA, VIVA NATURAL PIZZA INC. d/b/a VIVA CUCINA, ANTHONY IRACANI, JUSTIN IRACANI, and LENNY IRACANI, | : : : : : | |
| Defendants. | : | |

------------------------------------------------------------------------X

Plaintiffs MARTIN VILLANO, VICTOR MORALES, MARCOS DIEGO

TAPIA, and JORGE LUIS GARCIA (hereinafter, "Plaintiffs"), on behalf of themselves

and other similarly situated employees, by and through their undersigned attorneys,

Cilenti & Cooper, PLLC, file this Complaint against defendants BROADWAY VIVA,

INC. d/b/a CAFÉ VIVA GOURMET PIZZA ("BROADWAY VIVA, INC."), VIVA

NATURAL PIZZA INC. d/b/a VIVA CUCINA ("VIVA NATURAL PIZZA INC.")

(collectively, the "Corporate Defendants"), ANTHONY IRACANI, JUSTIN IRACANI,

and LENNY IRACANI (collectively, the "Individual Defendants") (the Corporate

Defendants and the Individual Defendants are collectively referred to herein as the "Defendants"), and state as follows:

## INTRODUCTION

1.      Plaintiffs allege that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), they are entitled to recover from Defendants: (a) unpaid minimum wages, (b) unpaid overtime compensation, (c) liquidated damages, (d) prejudgment and post-judgment interest, and (e) attorneys' fees and costs.

2.      Plaintiffs further allege that, pursuant to the New York Labor Law, they are entitled to recover from Defendants: (a) unpaid minimum wages, (b) unpaid overtime compensation, (c) unpaid "spread of hours" premiums for each day that their shift exceeded ten (10) hours, (d) liquidated and statutory damages pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act, (e) prejudgment and post-judgment interest, and (f) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this judicial district.

## PARTIES

5.      Plaintiff, MARTIN VILLANO, is a resident of Bronx County, New York.

6.     Plaintiffs VICTOR MORALES and JORGE LUIS GARCIA are residents of New York County, New York.

7.     Plaintiff, MARCOS DIEGO TAPIA, is a resident of Kings County, New York.

8.     Defendant, BROADWAY VIVA, INC., is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 2578 Broadway, New York, New York 10025.

9.     Defendant, BROADWAY VIVA, INC., owns and operated a restaurant doing business as "Café Viva Gourmet Pizza," located at 2578 Broadway, New York, New York 10025 (hereinafter, "Café Viva").

10.     Café Viva discontinued operations on or about September 9, 2022.

11.     Defendant, VIVA NATURAL PIZZA INC., is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 85 Second Avenue, New York, New York 10003.

12.     Defendant, VIVA NATURAL PIZZA INC., owns and operates a restaurant doing business as "Viva Cucina," located at 85 Second Avenue, New York, New York 10003 (hereinafter "Viva Cucina").[1]

13.     The Individual Defendants began operating Viva Cucina on or about April 28, 2022.

14.     The Individual Defendants are each officers, shareholders, principals, owners, directors, supervisors, managing agents of the Corporate Defendants who actively participate in the day-to-day operations of the Restaurants and acted intentionally and maliciously and are employers pursuant to the FLSA, 29 U.S.C. § 203(d) and

---

[1] Each of the enterprises identified herein are collectively referred to as the "Restaurants."

Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

15.     The Individual Defendants jointly exercised control over the terms and conditions of Plaintiffs' employment in that they have the power to and did in fact: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control the work of the employees, and (v) create and maintain employment records.

16.     The Individual Defendants are or were present on the premises of the Restaurants on a daily basis, actively supervise the work of the employees, and mandate that all issues concerning the employees' employment – including hours worked and pay received – be authorized and approved by them.

17.     During each of the most recent three (3) years relevant to the allegations herein, Defendant BROADWAY VIVA, INC. was an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) had employees engaged in commerce or in the production of goods for commerce, or that handled, sold, or otherwise worked on goods or materials that had been moved in or produced for commerce, and (ii) had an annual gross volume of sales of not less than $500,000.

18.     During the 2022 calendar year, Defendant VIVA NATURAL PIZZA INC. has been an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) has employees engaged in commerce or in the production of goods for commerce, or that handled, sold, or otherwise worked on goods or materials that had been moved in or

produced for commerce, and (ii) has an annual gross volume of sales of not less than $500,000.

19.     Defendants employed Plaintiff, MARTIN VILLANO, from in or about 1999 until on or about September 9, 2022 to work as a non-exempt food preparer, pizza maker, and general kitchen helper.

20.     Defendants employed Plaintiff, VICTOR MORALES, from in or about April 2017 until on or about September 9, 2022 to work as a non-exempt food preparer, counter-person/server, and food delivery worker.

21.     Defendants employed Plaintiff, MARCOS DIEGO TAPIA, from in or about 2004 until on or about September 9, 2022 to work as a non-exempt dishwasher, counter-person/server, pasta maker, and food delivery worker.

22.     Defendants employed Plaintiff, JORGE LUIS GARCIA, from on or about October 28, 2021 until on or about September 9, 2022 to work as a non-exempt dishwasher and food delivery worker.

23.     The work performed by Plaintiffs was directly essential to the businesses operated by Defendants.

24.     Defendants knowingly and willfully failed to pay certain Plaintiffs their lawfully earned minimum wages in direct contravention of the FLSA and New York Labor Law.

25.     Defendants knowingly and willfully failed to pay each of the Plaintiffs their lawfully earned overtime compensation in direct contravention of the FLSA and New York Labor Law.

26.     Defendants knowingly and willfully failed to pay each of the Plaintiffs their lawfully earned "spread of hours" premiums in direct contravention of the New York Labor Law.

27.     Plaintiffs have satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

## STATEMENT OF FACTS

28.     The Individual Defendants actively participate in the day-to-day operation of the Restaurants.  For instance, the Individual Defendants personally supervise and direct the work of the employees and instruct the employees how to perform their jobs.

29.     The Individual Defendants jointly create and approve all crucial business policies, and jointly make decisions concerning the locations where the Plaintiffs were to work, number of hours the Plaintiffs were required to work, the amount of pay that the Plaintiffs were entitled to receive, and the manner and method by which the Plaintiffs were to be paid.

30.     The Corporate Defendants are associated as a single enterprise, utilizing Plaintiffs in a fungible and interchangeable manner as workers in the businesses operated by the Defendants.

31.     The Corporate Defendants each engage in related activities, namely, providing restaurant services to the general public for profit. The Corporate Defendants shared Plaintiffs and other similarly situated employees, acted in the interest of each other with respect to employees, paid their employees by the same plan or scheme, and are under common control.

32.    The Corporate Defendants are controlled by the same owner or owner group, operating as a unified operation and, upon information and belief, each provide mutually supportive services to the substantial advantage of the other such that each entity is operationally interdependent of each other and, therefore, may be treated as a single enterprise.

**Plaintiff Martin Villano**

33.    In or about 1999, Defendants hired Plaintiff, MARTIN VILLANO, to work at Café Viva as a non-exempt food preparer, pizza maker, and general kitchen helper.

34.    Upon its opening on or about April 28, 2022, Defendants instructed Plaintiff to work in the same capacities in the evenings at Viva Cucina after the completion of his day shift at Café Viva.

35.    Plaintiff continued to work in those capacities until his employment came to an end upon the closing of Café Viva on or about September 9, 2022.

36.    Plaintiff was required to punch a time clock or other time-recording device to track his work hours at the beginning and end of each work shift throughout the entirety of his employment at both Restaurants.

37.    From the beginning of the six-year limitations period in November 2016 and continuing through on or about March 15, 2020, while working at Café Viva, Plaintiff worked six (6) days per week and, although his work shift fluctuated slightly each week, his normal work schedule consisted of ten (10) hours per day from 10:00 a.m. until 8:00 p.m.

38.     Plaintiff's work shift would occasionally exceed ten (10) hours in a single day during this period.

39.     From the beginning of the six-year limitations period in November 2016 and continuing through in or about December 2016, Plaintiff was not paid proper overtime compensation.  During this period, Plaintiff was paid at the rate of $17 per hour straight time for all hours worked and worked sixty (60) hours per week (and sometimes in excess thereof).  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

40.     Beginning in or about January 2017 and continuing through in or about December 2017, while working at Café Viva, Plaintiff was not paid proper overtime compensation.  During this period, Plaintiff was paid at the rate of $18 per hour straight time for all hours worked and worked sixty (60) hours per week (and sometimes in excess thereof).  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

41.     Beginning in or about January 2018 and continuing through in or about December 2018, while working at Café Viva, Plaintiff was not paid proper overtime compensation.  During this period, Plaintiff was paid at the rate of $19 per hour straight time for all hours worked and worked sixty (60) hours per week (and sometimes in excess thereof).  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

42.     Beginning in or about January 2019 and continuing through in or about December 2019, while working at Café Viva, Plaintiff was not paid proper overtime compensation.  During this period, Plaintiff was paid at the rate of $20 per hour straight

time for all hours worked and worked sixty (60) hours per week (and sometimes in excess thereof). Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

43.     Beginning in or about January 2020 and continuing through on or about March 15, 2020, while working at Café Viva, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $21 per hour straight time for all hours worked and worked sixty (60) hours per week (and sometimes in excess thereof). Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

44.     Upon the onset of the Covid-19 pandemic on or about March 16, 2020 and continuing through in or about June 2020, while working at Café Viva, Plaintiff worked six (6) or seven (7) days per week and, although his work shift fluctuated slightly each week, his normal work schedule consisted of ten (10) hours per day from 10:00 a.m. until 8:00 p.m.

45.     Plaintiff's work shift would occasionally exceed ten (10) hours in a single day during this period.

46.     Beginning on or about March 16, 2020 and continuing through in or about June 2020, while working at Café Viva, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $21 per hour straight time for all hours worked and worked sixty (60) to seventy (70) hours per week (and sometimes in excess thereof). Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

47.     Beginning in or about July 2020 and continuing through on or about April 27, 2022, while working at Café Viva, Plaintiff worked six (6) days per week and, although his work shift fluctuated slightly each week, his normal work schedule consisted of ten (10) hours per day from 10:00 a.m. until 8:00 p.m.

48.     Plaintiff's work shift would occasionally exceed ten (10) hours in a single day during this period.

49.     Beginning in or about July 2020 and continuing through on or about April 27, 2022, while working at Café Viva, Plaintiff was not paid proper overtime compensation.  During this period, Plaintiff was paid at the rate of $21 per hour straight time for all hours worked and worked sixty (60) hours per week (and sometimes in excess thereof).  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

50.     Beginning on or about April 28, 2022 and continuing through the remainder of his employment on or about September 9, 2022, Plaintiff worked six (6) days per week and, although his work shift fluctuated slightly each week, his normal work schedule consisted of six (6) hours per day at Café Viva from 10:00 a.m. until 4:00 p.m.; and five (5) hours per day at Viva Cucina from 5:00 p.m. until 10:00 p.m.

51.     Beginning on or about April 28, 2022 and continuing through the remainder of his on or about September 9, 2022, while working at both Café Viva and Viva Cucina, Plaintiff was not paid proper overtime compensation.  During this period, Plaintiff was paid at the rate of $23 per hour straight time for all hours worked and worked sixty-six (66) hours per week (and sometimes in excess thereof).   Work

performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

52.     Defendants failed to provide Plaintiff with proper and accurate written wage statements during each pay period, which sets forth his hours worked, gross wages, deductions, and net wages.

**Plaintiff Victor Morales**

53.     In or about April 2017, Defendants hired Plaintiff VICTOR MORALES to work at Viva Cafe as a non-exempt food-preparer, counter-person/server, and food delivery worker.

54.     Neither at the time of his hire nor anytime thereafter did Defendants provide Plaintiff with a written wage notice setting forth his regular hourly rate of pay and his corresponding overtime rate of pay.

55.     Plaintiff continued to work in those capacities until his employment came to an end on or about September 9, 2022.

56.     Plaintiff was required to punch a time clock or other time-recording device to track his work hours at the beginning and end of each work shift throughout the entirety of his employment.

57.     From the beginning of his employment and continuing through in or about May 2017, Plaintiff worked six (6) days per week and, although his work shift fluctuated slightly each week, his normal work schedule consisted of thirteen (13) hours per day from 2:00 p.m. until 3:00 a.m.

58.     From the beginning of his employment and continuing through in or about May 2017, Plaintiff was not paid proper minimum wages and overtime compensation.

During this period, Plaintiff was paid at the rate of $10 per hour straight time for all hours worked and worked seventy-eight (78) hours per week (and sometimes in excess thereof). Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

59.     Beginning in or about June 2017 and continuing through on or about March 15, 2020, Plaintiff worked six (6) days per week and, although his work shift fluctuated slightly each week, his normal work schedule consisted of twelve (12) hours per day from 10:00 a.m. until 10:00 p.m.

60.     From in or about June 2017 and continuing through in or about December 2018, Plaintiff was not paid proper minimum wages and overtime compensation.  During this period, Plaintiff was paid at the rate of $10 per hour straight time for all hours worked and worked seventy-two (72) hours per week (and sometimes in excess thereof). Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

61.     Beginning in or about January 2019 and continuing through on or about March 15, 2020, Plaintiff was not paid proper minimum wages and overtime compensation.  During this period, Plaintiff was paid at the rate of $11 per hour straight time for all hours worked and worked seventy-two (72) hours per week (and sometimes in excess thereof).  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

62.     Upon the onset of the Covid-19 pandemic on or about March 16, 2020 and continuing through in or about February 2021, Plaintiff worked seven (7) days per week

and, although his work shift fluctuated slightly each week, his normal work schedule consisted of ten (10) hours per day from 11:00 a.m. until 9:00 p.m.

63.     Plaintiff's work shift would occasionally exceed ten (10) hours in a single day during this period.

64.     Beginning on or about March 16, 2020 and continuing through in or about February 2021, Plaintiff was not paid proper minimum wages and overtime compensation.  During this period, Plaintiff was paid at the rate of $11 per hour straight time for all hours worked and worked seventy (70) hours per week (and sometimes in excess thereof).  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

65.     Beginning in or about March 2021 and continuing through in or about February 2022, Plaintiff worked four (4) to five (5) days per week and, although his work shift fluctuated slightly each week, his normal work schedule consisted of six (6) hours per day from 10:00 a.m. until 4:00 p.m.

66.     Beginning in or about March 2021 and continuing through in or about February 2022, Plaintiff was not paid proper minimum wages.  During this period, Plaintiff was paid at the rate of $11 per hour and worked between twenty-four (24) and thirty (30) hours per week (and sometimes in excess thereof).

67.     Beginning in or about March 2022 and continuing through the remainder of his employment on or about September 9, 2022, Plaintiff worked four (4) days per week and, although his work shift fluctuated slightly each week, his normal work schedule consisted of six (6) hours per day from 10:00 a.m. until 4:00 p.m.

68.     Beginning in or about March 2022 and continuing through in or about May 2022, Plaintiff was not paid proper minimum wages.  During this period, Plaintiff was paid at the rate of $11 per hour and worked twenty-four (24) hours per week (and sometimes in excess thereof).

69.     Beginning in or about June 2022 and continuing through the remainder of his on or about September 9, 2022, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid at the rate of $12 per hour and worked twenty-four (24) hours per week (and sometimes in excess thereof).

70.     Defendants failed to provide Plaintiff with proper and accurate written wage statements during each pay period, which sets forth his hours worked, gross wages, deductions, and net wages.

**Plaintiff Marcos Diego Tapia**

71.     In or about 2004, Defendants hired Plaintiff MARCOS DIEGO TAPIA to work at Viva Café as a non-exempt dishwasher.

72.     Plaintiff was promoted to the positions of counter-person/server, pasta maker, and food delivery worker.

73.     Plaintiff continued to work in those capacities until his employment came to an end on or about September 9, 2022.

74.     Plaintiff was required to punch a time clock or other time-recording device to track his work hours at the beginning and end of each work shift throughout the entirety of his employment.

75.     From the beginning of the six-year limitations period in November 2016 and continuing through on or about March 15, 2020, Plaintiff worked six (6) days per

week and, although his work shift fluctuated slightly each week, his normal work schedule consisted of twelve (12) hours per day from 10:00 a.m. until 10:00 p.m., and sometimes in excess thereof.

76.     From the beginning of the six-year limitations period in November 2016 and continuing through in or about December 2018 Plaintiff was not paid proper overtime compensation.  During this period, Plaintiff was paid at the rate of $13 per hour straight time for all hours worked and worked seventy-two (72) hours per week (and sometimes in excess thereof).  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

77.     Beginning in or about January 2019 and continuing through on or about March 15, 2020, Plaintiff was not paid proper minimum wages and overtime compensation.  During this period, Plaintiff was paid at the rate of $13 per hour straight time for all hours worked and worked seventy-two (72) hours per week (and sometimes in excess thereof).  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

78.     Upon the onset of the Covid-19 pandemic on or about March 16, 2020 and continuing through in or about August 2020, Plaintiff worked seven (7) days per week and, although his work shift fluctuated slightly each week, his normal work schedule consisted of twelve (12) hours per day from 10:00 a.m. until 10:00 p.m., and sometimes in excess thereof.

79.     Beginning on or about March 16, 2020 and continuing through in or about August 2020, Plaintiff was not paid proper minimum wages and overtime compensation.  During this period, Plaintiff was paid at the rate of $13 per hour straight time for all hours

worked, and worked eighty-four (84) hours per week (and sometimes in excess thereof). Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

80.     Beginning in or about September 2020 and continuing through the remainder of his employment on or about September 9, 2022, Plaintiff worked five (5) days per week and, although his work shift fluctuated slightly each week, his normal work schedule consisted of six (6) hours per day from 10:00 a.m. until 4:00 p.m.

81.     Beginning in or about September 2020 and continuing through the remainder of his employment on or about September 9, 2022, Plaintiff was not paid proper minimum wages.  During this period, Plaintiff was paid at the rate of $13 per hour and worked thirty (30) hours per week (and sometimes in excess thereof).

82.     Defendants failed to provide Plaintiff with proper and accurate written wage statements during each pay period, which sets forth his hours worked, gross wages, deductions, and net wages.

**Plaintiff Jorge Luis Garcia**

83.     On or about October 28, 2021, Defendants hired Plaintiff JORGE LUIS GARCIA to work at Café Viva as a non-exempt dishwasher and food delivery worker.

84.     Neither at the time of his hire nor anytime thereafter did Defendants provide Plaintiff with a written wage notice setting forth his regular hourly rate of pay and his corresponding overtime rate of pay.

85.     Plaintiff worked in those capacities until his employment came to an end on or about September 9, 2022.

86.     Plaintiff was required to punch a time clock or other time-recording device to track his work hours at the beginning and end of each work shift throughout the entirety of his employment.

87.     From the beginning of his employment and continuing through in or about May 2022, Plaintiff worked five (5) days per week (Monday and Tuesday off) and, although Plaintiff's work shift fluctuated slightly each day and week, his work shift normally consisted of seven (7) hours per day from 3:30 p.m. until 10:30 p.m.; and nine (9) hours on Saturday from 3:30 p.m. until 12:30 a.m.

88.     From the beginning of his employment and continuing through in or about May 2022, Plaintiff was not paid proper minimum wages.  During this period, Plaintiff was paid at the rate of $10 per hour and worked thirty-seven (37) hours per week (and sometimes in excess thereof).

89.     Beginning in or about June 2022 and continuing through the remainder of his employment on or about September 9, 2022, Plaintiff worked four days per week (Monday, Tuesday and Thursday off) and, although Plaintiff's work shift fluctuated slightly each day and week, his work shift normally consisted of eight and one-half (8½) hours per day from 4:00 p.m. until 12:30 p.m.; and nine (9) hours on Saturday from 4:00 p.m. until 1:00 a.m.

90.     Beginning in or about June 2022 and continuing through the remainder of his employment on or about September 9, 2022, Plaintiff was not paid proper minimum wages.  During this period, Plaintiff was paid at the rate of $10 per hour and worked thirty-four and one-half (34½) hours per week (and sometimes in excess thereof).

91.     Defendants failed to provide Plaintiff with written wage statements during each pay period, which set forth his gross wages, credits, deductions, and net wages.

92.     Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage to certain Plaintiffs and other similarly situated employees.

93.     Defendants knowingly and willfully operated their business with a policy of not paying each of the Plaintiffs and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in direct violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

94.     Defendants knowingly and willfully operated their business with a policy of not paying each of the Plaintiffs and other similarly situated employees a "spread of hours" premium for each day that their work shift exceeded ten (10) hours in a single day, in direct violation of the New York Labor Law and the supporting New York State Department of Labor Regulations.

95.     At all relevant times, upon information and belief, and during the course of Plaintiffs' employment, Defendants failed to maintain accurate and sufficient wage and hour records.

## COLLECTIVE ACTION ALLEGATIONS

96.    Plaintiffs bring this action individually and as class representatives on behalf of themselves and all other current and former non-exempt employees who have been or were employed by Defendants since November 3, 2019 through the end of the opt-in period as ultimately set by the Court (the "Collective Action Period"), and who were compensated at rates less than the statutory minimum wage and/or less than the statutory rate of time and one-half for all hours worked in excess of forty (40) hours per workweek (the "Collective Action Members").

97.    The collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are more than twenty (20) Collective Action Members who worked for Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

98.    Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

99.    This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of

either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

100.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a collective action.

101.    Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members.   Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are:

      a.    Whether Defendants employed Plaintiffs and the Collective Action Members within the meaning of the FLSA;

      b.    Whether Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiffs and the Collective Action Members;

      c.    What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d.    Whether Defendants failed to pay Plaintiffs and the Collective Action Members minimum wages, in violation of the FLSA and the regulations promulgated thereunder;

e.    Whether Defendants failed to pay Plaintiffs and the Collective Action Members overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

f.    Whether Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

g.    Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, attorneys' fees, and costs and disbursements.

102.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

103.    Plaintiffs and others similarly situated have been substantially damaged by the Defendants' wrongful conduct.

## STATEMENT OF CLAIM

### COUNT I
### [Violation of the Fair Labor Standards Act]

104.    Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "103" of this Complaint as if fully set forth herein.

105.    At all relevant times, upon information and belief, the Corporate Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§

206(a) and 207(a).  Further, Plaintiffs are covered individuals within the meaning of the

FLSA, 29 U.S.C. §§ 206(a) and 207(a).

106.    At all relevant times, Defendants employed Plaintiffs within the meaning

of the FLSA.

107.    During each of the most recent three (3) years relevant to the allegations

herein, Defendant BROADWAY VIVA, INC. had gross revenues in excess of $500,000.

108.    During the 2022 calendar year, Defendant VIVA NATURAL PIZZA INC.

has had gross revenues in excess of $500,000.

109.    During the 2022 calendar year, the Corporate Defendants have jointly had

gross revenues in excess of $500,000.

110.    Plaintiffs worked hours for which they were not paid the statutory

minimum wage.

111.    Defendants had, and continue to have, a policy and practice of refusing to

pay the statutory minimum wage to Plaintiffs for hours worked.

112.    Defendants failed to pay Plaintiffs minimum wages in the lawful amount

for hours worked.

113.    Plaintiffs were entitled to be paid at the rate of time and one-half for all

hours worked in excess of the maximum hours provided for in the FLSA.

114.    Defendants failed to pay Plaintiffs overtime compensation in the lawful

amount for all hours worked in excess of the maximum hours provided for in the FLSA.

115.    At all relevant times, Defendants had, and continue to have a policy and

practice of refusing to pay overtime compensation at the statutory rate of time and one-

half to Plaintiffs for all hours worked in excess of forty (40) hours per work week, which

violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

116.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs at the statutory minimum wage rate and the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when they knew or should have known such was due and that non-payment of minimum wages and overtime compensation would financially injure Plaintiffs.

117.    As a result of Defendants' failure to properly record, report, credit and/or compensate its employees, including Plaintiffs, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201 *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

118.    Defendants failed to properly disclose or apprise Plaintiffs of their rights under the FLSA.

119.    As a direct and proximate result of Defendants' violation of the FLSA, Plaintiffs are entitled to liquidated damages pursuant to the FLSA.

120.    Due to the reckless, willful and unlawful acts of Defendants, Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wages, unpaid overtime compensation, an equal amount as liquidated damages, and prejudgment interest thereon.

121.    Plaintiffs are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

## COUNT II
### [Violation of the New York Labor Law]

122.    Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "121" of this Complaint as if fully set forth herein.

123.    Defendants employed Plaintiffs within the meaning of New York Labor Law §§ 2 and 651.

124.    Defendants knowingly and willfully violated Plaintiffs' rights by failing to pay Plaintiffs minimum wages.

125.    Defendants knowingly and willfully violated Plaintiffs' rights by failing to pay Plaintiffs overtime compensation at the rate of time and one-half for each hour worked in excess of forty (40) hours in a workweek.

126.    Employers are required to pay a "spread of hours" premium of one (1) additional hour's pay at the statutory minimum hourly wage rate for each day where the spread of hours in an employee's workday exceeds ten (10) hours.  New York State Department of Labor Regulations § 146-1.6.

127.    Defendants knowingly and willfully violated Plaintiffs' rights by failing to pay "spread of hours" premium to Plaintiffs for each day that their work shift exceeded ten (10) hours pursuant to New York State Department of Labor Regulations.

128.    Defendants failed to properly disclose or apprise Plaintiffs of their rights under the New York Labor Law.

129.    Defendants failed to furnish Plaintiffs with a statement with every payment of wages listing gross wages, deductions, and net wages, in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations § 146-2.3.

130.    Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

131.    Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194(4), and New York State Department of Labor Regulations § 146-2.1.

132.    Neither at the time of their hiring, nor anytime thereafter, did Defendants notify certain Plaintiffs in writing of their regular and overtime rates of pay and their regularly designated payday, in contravention of New York Labor Law § 195(1).

133.    Due to the Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants their unpaid minimum wages, unpaid overtime compensation, unpaid "spread of hours" premium, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law §§ 663(1), 198.

134.    Plaintiffs are also entitled to liquidated damages pursuant to New York Labor Law § 663(1), as well as statutory and liquidated damages pursuant to the New York State Wage Theft Prevention Act.

## **PRAYER FOR RELEIF**

**WHEREFORE**, Plaintiffs MARTIN VILLANO, VICTOR MORALES, MARCOS DIEGO TAPIA, and JORGE LUIS GARCIA respectfully request that this Court grant the following relief:

(a)     An award of unpaid minimum wages due under the FLSA and New York Labor Law;

(b)     An award of unpaid overtime compensation due under the FLSA and New York Labor Law;

(c)     An award of unpaid "spread of hours" premium due under the New York Labor Law;

(d)     An award of liquidated damages as a result of Defendants' failure to pay minimum wages and overtime compensation pursuant to 29 U.S.C. § 216;

(e)     An award of liquidated damages as a result of Defendants' failure to pay minimum wages, overtime compensation, and "spread of hours" premium pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act;

(f)     An award of statutory damages pursuant to the New York State Wage Theft Prevention Act;

(g)     An award of prejudgment and post-judgment interest;

(h)     An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees; and

(i)     Such other and further relief as this Court determines to be just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand

trial by jury on all issues.

Dated: New York, New York
       November 3, 2022

Respectfully submitted,

CILENTI & COOPER, PLLC
*Attorneys for Plaintiffs*
60 East 42nd Street – 40th Floor
New York, NY 10165
T. (212) 209-3933
F. (212) 209-7102

By: _____
       Giustino (Justin) Cilenti

**CONSENT TO SUE UNDER**
**FAIR LABOR STANDARDS ACT**

I, Martin Villano, am an employee currently or formerly employed by Broadway

Viva Inc. (Café Vida Gourmet Pizza), Villa Cucina and/or related entities.  I consent to

be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
       October 11, 2022

                                 Martin Villano

**CONSENT TO SUE UNDER**
**FAIR LABOR STANDARDS ACT**

I, Victor Morales, am an employee currently or formerly employed by Broadway

Viva Inc. (Café Vida Gourmet Pizza), and/or related entities.  I consent to be a plaintiff in

the above-captioned action to collect unpaid wages.

Dated: New York, New York
      October 11, 2022

_____
Victor Morales

**CONSENT TO SUE UNDER**
**FAIR LABOR STANDARDS ACT**

I, Marcos Diego Tapia, am an employee currently or formerly employed by Broadway Viva Inc. (Café Vida Gourmet Pizza), and/or related entities. I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
      October 11, 2022

Marcos Diego Tapia

**CONSENT TO SUE UNDER**
**FAIR LABOR STANDARDS ACT**

I, Jorge Luis Garcia, am an employee currently of formerly employed by Broadway Viva Inc. (Café Vida Gourmet Pizza), and/or related entities. I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
      October 11, 2022

_____
Jorge Luis Garcia